Maurice Charles LOVEJOY, Appellant,

v.

Michael GOODRICH, Charles Johnson,
City of Pagedale and Mary
Hall, Appellees.

No. 85–1898.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1986.

Decided Aug. 25, 1986.

Robert B. Ramsey, St. Louis, Mo., for appellant.

Frank Susman, St. Louis, Mo., for appellees.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Maurice Charles Lovejoy sued the City of Pagedale, Pagedale Mayor Mary Hall, and Pagedale Police Officers Goodrich, Johnson, and Meadows, for alleged violations of Lovejoy's civil rights pursuant to 42 U.S.C. § 1983. Essentially, Lovejoy alleged a policy of police harassment condoned by the City and Mayor Hall, which included false arrests, use of excessive force during arrests, and malicious prosecutions. At the conclusion of Lovejoy's evidence at trial, the district court granted motions to dismiss all defendants[1] except Officer Goodrich. Thereafter, the jury returned a verdict in favor of Goodrich. On appeal, Lovejoy contends, *inter alia*, that the district court erred in excluding evidence of two incidents of police harassment. For the reasons set forth below, we remand for a new trial.

## I.  BACKGROUND

In his pleading, Lovejoy based his claims of police harassment on a number of incidents, including: (1) an allegedly false arrest and assault of Lovejoy by Officer Goodrich in 1979; (2) a second allegedly false arrest for receiving stolen property in 1982; and (3) a subsequent allegedly false arrest and use of excessive force in 1983. Immediately prior to trial, the district court ruled that it would exclude evidence relating to the 1979 arrest because the statute of limitations barred Lovejoy's claim on

---

1. On Lovejoy's motion, the court had previously    dismissed the claims against Officer Meadows.

**1202**

that issue.[2] The district court rigorously enforced that ruling at trial.

In addition, Lovejoy sought to establish a continuing pattern of police harassment by evidence of his subsequent arrest by Goodrich in 1984, for allegedly driving while intoxicated. Although appellant does not specify this precise ruling as error, a reading of the record establishes that repetitive objections and rulings of the court served to effectively bar admission of testimony concerning the 1984 event. We examine the allegations of error against the facts relating to the arrests procured or effectuated by Officer Goodrich.

### A. The 1982 Arrest

On February 5, 1982, at 2:00 A.M., Officer Goodrich discovered a stripped automobile on the street near Lovejoy's residence. His investigation established that the vehicle had been stolen, that tracks in the snow led from the vehicle to Lovejoy's garage door, and that bits of glass similar to the glass in the car's broken taillight were on Lovejoy's driveway. Goodrich knocked on Lovejoy's door to question him about the vehicle that night. Failing in this effort, Goodrich entered a charge in the police computer against Lovejoy for receiving stolen property.

Subsequently, on March 1, 1982, Pagedale police arrested Lovejoy on this charge. The police detained Lovejoy at the Pagedale police station for questioning while they sought to notify Goodrich of the arrest. Lovejoy was held in custody for approximately eight hours before Goodrich arrived to question him. After obtaining negative answers to questions about the stolen vehicle, Goodrich ordered Lovejoy released pending the issuance of a warrant for Lovejoy's arrest. However, no warrant ever issued.

### B. The 1983 Arrest

The second incident occurred on May 17, 1983. From the record, it appears that a Mrs. Van Zant, who was visiting her mother's home near Lovejoy's residence, contacted the police after an argument with Lovejoy. The argument arose after Mrs. Van Zant's son told her that Lovejoy had encouraged his children to fight with her son.[3] When Mrs. Van Zant attempted to discuss the incident with Lovejoy, Lovejoy became angry and verbally abused Van Zant with loud and foul language. Van Zant then called the police. Sergeant

---

2. We observe that the district court apparently applied Missouri's three-year statute of limitations, Mo.Rev.Stat. § 516.130(1) (1978), to Lovejoy's claims. *See Foster v. Armontrout*, 729 F.2d 583, 586 (8th Cir.1984) (applying this three-year statute of limitations to prisoner's civil rights action against warden and guards).

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985), the Supreme Court held that the statute of limitations for general personal injury actions sounding in tort applies to suits for violation of civil rights under 42 U.S.C. § 1983. Subsequently, this court has held that *Wilson* should be applied retroactively. *Farmer v. Cook*, 782 F.2d 780 (8th Cir.1986) (per curiam) (Missouri's five-year statute of limitations for personal injury claims); *Wycoff v. Menke*, 773 F.2d 983, 987 (8th Cir.1985), *cert. denied*, ─── U.S. ───, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986) (Iowa's personal injury statute of limitations); *but see Ridgway v. Wapello County, Iowa*, 795 F.2d 646 (8th Cir.1986) (denying *Wilson* retroactive effect where retroactive application would work injustice on plaintiff who reasonably relied on clear past precedent). Mo. Rev.Stat. § 516.120 (1978) provides a five-year period of limitations for personal injury claims. As Lovejoy filed his complaint on September 22, 1983, allegations based on the 1979 arrest would not be barred by this five-year statute of limitations. However, because Lovejoy failed to raise this issue on appeal, we do not base our opinion on it.

3. From answers to questions to which an objection was sustained, we know that Van Zant's son told his mother that Lovejoy encouraged his children to "jump" on him. We note that the court erroneously excluded the testimony as hearsay because the statement reflects a non-hearsay purpose (that is, whether true or not, the fact that the statement was made is important).

In reading the record, we observed several instances of questionable rulings on evidence in response to objections by attorneys for each of the parties. However, these rulings are not before us. We mention this ruling in case the trial judge may wish to review the transcript and reconsider some of those rulings in light of this opinion.

Meadows and Officer Goodrich responded. After talking with Van Zant, the officers went to Lovejoy's home and found him outside in the garage. When the officers attempted to discuss the matter with him, Lovejoy responded with invective and additional foul language and tried to leave the officers' presence. The officers then restrained him from entering his home, arrested him for parental neglect, handcuffed him, and took him to the Pagedale police station. Goodrich testified that he made the arrest, in part, because Lovejoy refused to make any statement and the officers could not conduct their investigation.

At the station, Lovejoy asked Police Chief Odis Williams to intervene, which he did by berating the officers in the presence of relatives who had come to the station to assist Lovejoy. In addition, Chief Williams informed the officers that they had incorrectly charged Lovejoy with parental neglect, and advised them that the charge should be changed to a breach of the peace. Lovejoy obtained release under a $900 bond. As we understand the record, the breach of peace charge came to trial, but was dismissed.

As a result of this arrest, Lovejoy wrote a letter to the police chief complaining of his treatment, in particular by Officer Goodrich. After investigating the matter, Chief Williams recommended to Mayor Hall and the Board of Alderpersons that Goodrich be dismissed and that Sergeant Meadows be demoted to patrolman. Of Goodrich, the Chief wrote:

> I recommend that Officer Goodrich be dismissed from this department, because his attitude is bad. He has no respect for citizens and eventually he will get the city sued. Officer Goodrich has at least five complaints from citizens that I am entertaining. Officer Goodrich's record is very poor.

Although Chief Williams suspended Officer Goodrich without pay, Mayor Hall advised Goodrich to remain on the job.

In light of this background, we address the issues.

## II.  DISCUSSION

Based on the two arrests just described, Lovejoy made a tenable case that the Pagedale police in general, and Goodrich in particular, utilized the arrest process for investigative purposes. Whether or not these arrests, which Lovejoy specifically pleaded, amounted to continuing harassment by Goodrich and whether or not Goodrich acted in good faith in these arrests were issues for the jury. Clearly, the existence of an earlier arrest of Lovejoy by Goodrich would be important and relevant to these issues. *See United States v. Garvin*, 565 F.2d 519, 523 (8th Cir.1977) (admissibility of evidence of events extending beyond the statute of limitations to show motive or continuing scheme). Yet on several occasions, in response to motions or objections, the district court barred introduction of the 1979 arrest of Lovejoy by Goodrich because it occurred outside the period of limitations. To demonstrate that the district court erroneously excluded this evidence, we recite two rulings, of several on this issue, from the record. In the initial ruling on the admissibility of the 1979 arrest (which occurred before the calling of the jury), the trial judge stated:

> The first evidentiuary [sic] problem involves the defense raised by the Statute of Limitations. There are three alleged arrests involved which form the basis for the claim of the Plaintiff. One allegedly occurred July 17th, 1979, another March 1st, 1982, and the third May 17th, 1983. The suit was filed by the Plaintiff Pro Se before present Counsel was appointed to represent him on September the 21st, 1983. The Court is going to rule that the [ ] Statute of Limitations do in fact apply in this case and I will, assuming that objections are made, exclude evidence of the purported arrest of July 17th, 1979, as it occurred more than three years before the date that the suit was filed on September the 21st, 1983.
>
> The other dates of arrests, March 1st, 1982 and May 17th, 1983, of course, are certainly not barred by the statute. The

ruling on that will apply as to all counts in the complaints that remain for trial.

Subsequently, the court's rulings served to bar admission of any evidence of this arrest.[4]

In addition, the court refused to allow Lovejoy to make an offer of proof concerning aspects of the 1979 arrest, as the following dialogue from the record demonstrates (cross-examination of former police Sergeant Meadows by Lovejoy's counsel, Ramsey):

Q. Did Officer Goodrich ever tell you that several citizens had filed complaints against him?

A. No, he didn't.

Q. Did he tell you that Mr. Lovejoy had filed a complaint against him in 1979?

Mr. Ullom (counsel for defendants Goodrich, Johnson, and Hall): Objection, Your Honor.

The Court: Just a moment. Counsel, will you approach the bench.

(Side bar conference held out of the hearing of the Jury.)

The Court: The objection will be sustained, and, Counsel, if you get in any one more fashion of a question about that incident, I'm going to hold you in contempt of court.

Mr. Ramsey: Your Honor—

The Court: That's all.

Mr. Ramsey: Can I make a record?

The Court: No, you can't make a record.

(End side bar.)

In light of the evidence presented concerning the 1982 and 1983 arrests, we hold that the exclusion of this relevant evidence constituted prejudicial error, and we remand this case for a new trial against Goodrich. In so doing we note that the excluded evidence does not appear to affect any defendant except Goodrich.[5]

■ Inasmuch as this case requires retrial, we further observe that the district court erred in excluding other evidence on grounds that Lovejoy failed to include it in his pleadings. For example, the following exchange occurred during plaintiff's direct examination of Alderwoman Louise Hall:

Q. Was there an incident involving Officer Goodrich just prior to his leaving the Department?

Mr. Susman (counsel for defendants Mayor Hall and the City of Pagedale): Objection, Your Honor.

The Court: How is this relevant, Counsel?

Mr. Ramsey: I think I am entitled to show—

The Court: Well, we'll make a record.

(Side bar conference held out of the hearing of the Jury.)

The Court: All right. What is the relevancy of the Officer leaving the employment of the Defendant City two or three months ago?

Mr. Ramsey: Mrs. Hall has indicated to me that prior to his leaving that there was an incident involving Officer Goodrich, that he was at the heart of racial problems in the Department at that time. I wasn't allowed to go into it with Mr. Williams as to any racial problems that existed between himself and Officer Goodrich, even though the Defendant was allowed to paint Mr. Williams up as being biased against MR. [sic] Goodrich.

The Court: Yes, but that wasn't on the basis of race. As a matter of fact, nobody has mentioned it, but I didn't realize that the racial aspect of this case was a problem. It's not been pleaded.

Mr. Ullom: No, it's not.

---

4. For example, during cross-examination, Lovejoy's counsel asked Goodrich how many times he had arrested Lovejoy. The district court sustained an objection to this question on grounds of relevance.

5. From the record, it does not appear that Lovejoy sought to establish that the City, Mayor, or Board of Alderpersons had notice of complaints about Goodrich before 1983.

Mr. Susman: I'm sure you have no idea what race Mr. Goodrich was.

Mr. Ramsey: I wasn't aware I had to plead every fact that was to be brought out.

The Court: I think you certainly do for a 1983 claim.

Mr. Ramsey: Well, I'll withdraw the question.

(End side bar.)

Although Lovejoy alleged no error in this ruling, we cite it because we are concerned that the court's reasoning may have affected other rulings restricting evidence, particularly its exclusion of evidence of a 1984 arrest of Lovejoy by Goodrich, which although not included in the pleadings, related to the issue of Goodrich's motive. We know of no rule, especially applying to section 1983 claims, overruling the requirement of a short statement of the claim showing the pleader is entitled to relief. Fed.R.Civ.P. 8. Although we have held that purely conclusory allegations are insufficient to state a claim, *Martin v. Aubuchon*, 623 F.2d 1282, 1285–86 (8th Cir.1980) (per curiam), the complaint here recites a factual basis for relief. Resorting to the pleadings, rather than the Federal Rules of Evidence, is an incorrect basis for evidentiary rulings.

### III. CONCLUSION

Due to the district court's erroneous rulings on the admissibility of evidence of the 1979 arrest, we order a new trial against appellee Goodrich only.