Rory D. NITCHER, Appellant,

v.

NEWTON COUNTY JAIL, et al.,
Respondents.

No. 15428.

Missouri Court of Appeals,
Southern District,
Division One.

May 31, 1988.

Rory D. Nitcher, pro se.

Richard S. Magruder, Jerry Kenter, North Kansas City, for respondents.

CROW, Chief Judge.

Rory D. Nitcher ("plaintiff") filed suit, pro se, naming "Newton County Jail" and "Sheriff John Doe" as defendants. The trial court ordered the action dismissed "by reason of expiration of the three-year statute of limitations." Plaintiff appeals. The vexing issues permeating this litigation will become apparent from the following synopsis.

Plaintiff, an inmate of the Missouri state penitentiary, signed and swore to a petition June 17, 1987, averring, in summary, that (1) between May 11, 1982, and June 23, 1982, inclusive, he had been incarcerated in the Newton County jail, (2) Sheriff John Doe was the Newton County sheriff during such period and "had charge and control of defendant Newton County Jail during that period," (3) during his incarceration plaintiff was confined 10 hours each day in an 8–foot by 14–foot cell with up to 7 other men, and the remainder of each day was confined in a 14–foot by 20–foot cell with up to 15 other men, (4) plaintiff at no time was allowed outdoor or indoor recreation, (5) the cells were not under observation by security personnel, and no "periodic safety checks" were made, (6) the lack of security resulted in plaintiff "being assaulted and hospitalized," (7) during his incarceration plaintiff received a nutritionally deficient diet, and upon arrival at the Department of Corrections was diagnosed as suffering "vitamin deficiency syndrome," (8) while in the Newton County jail plaintiff was not supplied clean clothing or access to laundry facilities, nor was he provided soap and toothbrush, (9) plaintiff had no access to educational, social or religious programs in the Newton County jail, and (10) family visitation in the Newton County jail "consisted of peering through a three inch square window while trying to shout through a few small holes drilled in a steel plate." The petition prayed for damages of $3,800 "plus expenses."

The petition evidently arrived at the office of the Clerk of the Circuit Court of Newton County no later than June 19, 1987, as the petition bears the stamped notation: "Filed JUN 19 1987 Billie M. Gailey, Circuit Clerk & Ex-officio Recorder." The circuit court's "docket sheet," however, shows: "6 24 87 Petition filed. Motion for leave to proceed in forma pauperis and for issuance of summons filed."

The next docket entry is dated "7 22 87" and shows: "Plaintiff granted leave to proceed as a poor person."

On July 23, 1987, the circuit clerk issued a summons to defendant "Sheriff John Doe," and a summons to defendant "Newton County Jail."[1] The summons to defendant Doe bears a return showing service July 24, 1987, on Mark Bridges. The summons to defendant Jail bears a return showing service July 23, 1987, on someone whose name is illegibly written.[2]

The next activity of record occurred August 18, 1987, when a document captioned "Motion to Dismiss and Suggestions in Support Thereof" was filed by attorney Richard S. Magruder, who identified himself as "Attorney for Defendants." The document began: "COMES NOW Defendants by and through counsel, and for their Motion to Dismiss, state...." The document asserted that plaintiff had filed his

---

1. On our own initiative, Rule 81.12(e), Missouri Rules of Civil Procedure (19th ed. 1988), we ordered the record on appeal supplemented to include the summonses and returns, certified copies of which were promptly supplied by the clerk of the circuit court.

2. The first letter of the forename appears to be "D"; the first letter of the surname appears to be "M."

petition "on or about the 23rd day of *July,* 1987." (Our emphasis.) That assertion, of course, was incorrect. As noted earlier, the petition bears a stamped filing date of *June* 19, 1987, and the docket sheet shows a filing date of *June* 24, 1987.

The document filed by Magruder averred that plaintiff's claim was "barred by the applicable three-year Statute of Limitations set forth in Section 516.130 Rs.Mo. 1979." Citing several cases, the document proclaimed that courts had "consistently held that this three-year Statute of Limitations applies to prisoners' actions against governmental officials concerning the conditions of their confinement." Furthermore, pled the document, the face of plaintiff's petition showed the action was barred by limitations, and plaintiff had the burden of proving any exception. Consequently, said the document, plaintiff's petition must be dismissed with prejudice as the statute of limitations constituted "an absolute bar to his action."

Plaintiff filed a prompt response, alleging that the defendants' reliance on the three-year statute of limitations was misplaced, as the Supreme Court of the United States had held in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that lawsuits such as his "should be characterized as personal injury claims for the purpose of applying the appropriate state statute of limitations." The Missouri statute of limitations for personal injuries, pled plaintiff, was § 516.120(4), RSMo 1978, which prescribed a five-year limitation. Citing *Lovejoy v. Goodrich,* 798 F.2d 1201 (8th Cir.1986), and *Farmer v. Cook,* 782 F.2d 780 (8th Cir.1986), plaintiff insisted that the five-year limitation of § 516.120(4) applied. Furthermore, explained plaintiff, even if his action were subject to a three-year limitation he still

would not be barred, as § 516.170, RSMo 1978, provided that a period of limitation was tolled where a cause of action accrued at a time when the person entitled to sue was imprisoned, and the period of limitation did not begin running until such disability was removed. Plaintiff averred he was imprisoned from May 11, 1982, until November 8, 1985. Therefore, according to plaintiff, the period of limitation did not begin running until the latter date, which was well within three years of the date his petition was filed.

The trial court, as we have seen, granted the defendants' motion to dismiss.

In the jurisdictional statement in his brief, Rule 84.04(a)(b),[3] plaintiff refers to his action as one under 42 U.S.C. § 1983.[4] Nowhere in his petition, however, did he mention 42 U.S.C. § 1983, nor did the petition aver that any of the circumstances or conditions described therein constituted a deprivation of any rights, privileges, or immunities secured by the constitution or laws of the United States.

The defendants, however, in their brief, adopted plaintiff's jurisdictional statement, and the arguments in defendants' brief are premised on the assumption that plaintiff's petition pleads (or attempts to) a cause of action under 42 U.S.C. § 1983.[5] Moreover, *Wilson,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254, the primary case cited by plaintiff to the trial court, involved an action under 42 U.S.C. § 1983. Accordingly, we shall decide this appeal on the basis that plaintiff is seeking relief under that statute.

Preliminarily, it should be noted that even though 42 U.S.C. § 1983 is a federal statute, Missouri state courts have concurrent jurisdiction of such cases with the federal courts. *Stafford v. Muster,* 582

---

**3.** Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988).

**4.** 42 U.S.C. § 1983 (1982) provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

**5.** As to what is necessary to state a claim for relief under 42 U.S.C. § 1983, see *Tyler v. Whitehead,* 583 S.W.2d 240, 242–43[4–6] (Mo.App. 1979).

S.W.2d 670, 681[25] (Mo. banc 1979); *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 315–16[4] (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979); *Tyler v. Whitehead*, 583 S.W.2d 240, 243[7] (Mo. App.1979).

In determining which statute of limitations applies to plaintiff's action, we learn from *Wilson* that there is no specific federal statute of limitations governing actions under 42 U.S.C. § 1983, and that where Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so. 471 U.S. at 266–67, 105 S.Ct. at 1942[1]. From that starting point, the Supreme Court of the United States held in *Wilson* that the forum state's statute of limitations applicable to tort actions for the recovery of damages for personal injuries was the one to be applied to actions under 42 U.S.C. § 1983. 471 U.S. at 276–80, 105 S.Ct. at 1947–49[5–7].

Plaintiff maintains here, as he did in the trial court, that the Missouri statute of limitations applicable to tort actions for the recovery of damages for personal injuries is § 516.120(4), RSMo 1986, which establishes a five-year limitation.[6] Defendants do not challenge that proposition. *See: Farwig v. City of St. Louis*, 499 S.W.2d 388, 389 (Mo.1973); *Daniels v. Schierding*, 650 S.W.2d 337, 338–39 (Mo.App.1983); *Langendoerfer v. Hazel*, 601 S.W.2d 290 (Mo.App.1980). Defendants insist, however, that *Wilson* should not be applied retroactively in the instant case.

The reason defendants argue against retroactive application of *Wilson* is that prior to *Wilson* the United States Court of Appeals, Eighth Circuit, had held that the three-year limitation of § 516.130(1), RSMo

1978,[7] applied to an action by an inmate of the Missouri state penitentiary against the warden and other penitentiary officers under 42 U.S.C. § 1983, where the inmate complained that he had been stabbed and beaten by other inmates immediately after the officials had denied his request for protection. *Foster v. Armontrout*, 729 F.2d 583 (8th Cir.1984). Defendants contend that if *Wilson* (decided April 17, 1985) does not apply retroactively to plaintiff's claim for his alleged constitutionally substandard confinement in the Newton County jail (May 11, 1982, until June 23, 1982), we should follow *Foster* and apply the three-year limitation of § 516.130(1). The three-year limitation would clearly bar plaintiff's action unless the running of the three-year period had been tolled during plaintiff's alleged three and a half years of imprisonment (May 11, 1982, until November 8, 1985).

Having noted the significance of the issue of retroactivity, we turn our attention to the question of when plaintiff commenced this suit. Defendants, in their brief, assert that plaintiff's petition was filed June 24, 1987. They obviously base this averment on the entry on the docket sheet showing that the petition was filed "6 24 87." Defendants' assertion in their brief is different than the position they took in the trial court, where they averred in their motion to dismiss that plaintiff's petition was filed on or about July 23, 1987. While we do not know where defendants got the latter date, it may be that they noticed that the summonses were issued on that date, and assumed the summonses were issued the day the petition was filed.

Be that as it may, if plaintiff's petition had indeed been filed June 24, 1987, the petition would arguably show on its face that it was one day too late for the five-year limitation of § 516.120(4), as the peti-

---

6. Section 516.120, RSMo 1986, provides:
   "Within five years:
   ....
   (4) An action for ... any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;
   ...."

7. Section 516.130, RSMo 1978, provided:
   "Within three years:
   (1) An action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty...."

tion averred the final day of plaintiff's constitutionally substandard confinement in the Newton County jail was June 23, 1982. Defendants state in their brief: "[Plaintiff's] cause of action, if any, began to accrue May 11, 1982, and ended June 23, 1982." In that regard, we find in *Foster* the following statement: "Because the limitations period runs from the date of the last discriminatory act, [claimant] argues his claim is not barred." 729 F.2d at 586. That statement, which appears without citation of authority, indicates that in the instant case, where plaintiff claims that the conditions of his confinement were below constitutional standards throughout his stay in the Newton County jail, the limitation period—whatever it was—did not begin running until June 23, 1982, the final day he was incarcerated there. Inasmuch as defendants, as we comprehend their brief, agree with that proposition, we shall assume—without deciding—that the period of limitation in the instant case began running June 23, 1982.

Plaintiff's petition, as reported earlier, was delivered to the office of the Clerk of the Circuit Court of Newton County no later than June 19, 1987, four days short of five years after June 23, 1982. Rule 53.01 provides: "A civil action is commenced by filing a petition with the court." Plaintiff's petition was evidently unaccompanied by a filing fee, as we have noted earlier that the docket entry of "6 24 87" shows the filing of the petition and the filing of a motion to proceed in forma pauperis. Leave to proceed as a poor person was granted by entry of "7 22 87."

While we find no Missouri case addressing the issue of when a civil action brought by a pauper is deemed to have been commenced where the petition is stamped filed on one date, a docket entry showing the filing is made on a later date, and leave is granted by the trial court under Rule 77.03 on still a later date for the suing party to commence and prosecute the action without cost deposit or security, there is a federal case remarkably similar to the instant case. In *Krajci v. Provident Consumer Discount Co.*, 525 F.Supp. 145 (E.D.Pa.1981), aff'd, 688 F.2d 822 (3d Cir.1982), the complainants filed a motion to proceed in forma pauperis, accompanied by their complaint, on August 16, 1979. The court granted the pauper motion August 21, 1979, and the complaint was docketed August 23, 1979. Because of an issue as to whether the action was barred by limitation, the court had to determine the date the action was instituted. On that issue, the court held that although a complaint tendered in forma pauperis cannot technically be "filed" until leave to proceed in forma pauperis has been granted, the limitations period is tolled by the lodging of the complaint; consequently, the action was instituted August 16, 1979. 525 F.Supp. at 149–50[2, 3].

In a case helpful by analogy, the Supreme Court of Missouri held that an action is begun when the petition is filed, even though summons may not thereafter be issued until the action is barred by limitation. *State ex rel. and to Use of Bair v. Producers Gravel Co.*, 341 Mo. 1106, 111 S.W.2d 521, 523[1] (1937). To the same effect see *City of St. Louis v. Miller*, 235 Mo.App. 987, 145 S.W.2d 504 (1940), where it is explained that the rationale for such principle is that the suing party, by filing his petition, has done all he can do toward commencement of the suit. 145 S.W.2d at 506.

As plaintiff's petition in the instant case was presented to the Clerk of the Circuit Court of Newton County no later than June 19, 1987, we hold that for the purpose of determining whether the period of limitation had run, plaintiff's action was "commenced" that date within the meaning of § 516.100, RSMo 1986, even though the docket entry memorializing the filing of the petition was not made until five days later, and leave was not granted plaintiff to proceed as a poor person for more than a month after the petition was received. Having reached that conclusion, it is obvious that we need not determine whether the running of the period of limitation was tolled during plaintiff's alleged imprisonment until November 8, 1985, *if* the five-year limitation of § 516.120(4) applies. It applies, of course, if *Wilson*, 471 U.S. 261,

105 S.Ct. 1938, 85 L.Ed.2d 254, has retroactive effect.

Neither party cites a Missouri case deciding whether *Wilson* applies to claims accruing prior to the date it was decided, and our independent research has failed to discover one. The United States Court of Appeals, Eighth Circuit, however, has had occasion to address the issue several times.

The first instance was *Wycoff v. Menke*, 773 F.2d 983 (8th Cir.1985), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986). There, an Iowa penitentiary inmate sued a penitentiary official per 42 U.S.C. § 1983, complaining about the conditions of his incarceration in an administrative segregation unit, from which he was released August 25, 1977. The inmate filed suit December 3, 1981; the official moved to dismiss on the ground that the action was barred by Iowa's two-year personal injury statute of limitations. On the basis of *Garmon v. Foust*, 668 F.2d 400 (8th Cir.1982), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), holding that the Iowa five-year "catchall" statute of limitations applied to § 1983 actions brought in Iowa, the federal district court denied the official's motion. The district court did, however, ultimately dismiss the action on the ground that the official was immune from suit. On appeal by the prisoner, the Eighth Circuit acknowledged that the decision of the Supreme Court of the United States in *Wilson* (decided while the appeal in *Wycoff* was pending) had overruled the Eighth Circuit's decision in *Garmon*, so that § 1983 claims accruing in Iowa after *Wilson* would be subject to Iowa's two-year personal injury statute of limitations. *Wycoff*, 773 F.2d at 984[1]. The Eighth Circuit in *Wycoff* then addressed the issue of whether *Wilson* should be applied retroactively. On that issue, the Eighth Circuit noted that the Supreme Court of the United States in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), had articulated three pertinent factors. First, did the new principle under consideration overrule clear past precedent on which litigants may have relied or decide an issue of first impression whose resolution was not clearly

foreshadowed? Second, in light of its purpose and effect, will retroactive application of the rule in question further or retard its operation? Third, could retroactive application of the principle in question produce substantial inequitable results in individual cases? *Wycoff*, 773 F.2d at 986.

As to the first factor, the Eighth Circuit in *Wycoff* determined that *Wilson* overruled no clear past precedent on which litigants may have relied, that instead the issue of the statute of limitations applicable to § 1983 actions had led to confusing and inconsistent results, and several cases in Iowa federal courts had applied the two-year Iowa limitation for personal injury claims. Consequently, the prisoner in *Wycoff* was aware that a two-year limitation might apply to his claim. *Wycoff*, 773 F.2d at 986. As to the second factor, the Eighth Circuit in *Wycoff* concluded that retroactive application of *Wilson* would achieve uniformity and certainty between future and pending cases by subjecting both to the same period of limitation. *Wycoff*, 773 F.2d at 986–87. As to the third factor, the Eighth Circuit in *Wycoff* held that retroactive application of *Wilson* would not produce an inequitable result, as the prisoner, in view of the contradictory and confusing state of the law prior to *Wilson*, could not reasonably have relied on a limitation period longer than two years. *Wycoff*, 773 F.2d at 987. The Eighth Circuit in *Wycoff* applied *Wilson* retroactively to the prisoner's claim. As a result, the claim was barred by the Iowa two-year limitation on personal injury actions.

The next decision by the Eighth Circuit on the issue of retroactivity was *Farmer*, 782 F.2d 780. There, a federal district court in Missouri had held—before *Wilson* was decided—that an action under 42 U.S. C. § 1983 was barred by Missouri's three-year statute of limitations, § 516.130(1). The Eighth Circuit in *Farmer*, noting that *Wycoff* had applied *Wilson* retroactively to *bar* a § 1983 action, reversed the district court and applied *Wilson* retroactively to *revive* an action against police officers who "once reasonably believed [it] was barred." *Farmer*, 782 F.2d at 780–81. Discussing

the three factors considered in *Wycoff,* the opinion in *Farmer* said: "The most important of these factors is whether retroactivity will disappoint any reliance interest of the party against whom the new rule is being applied." 728 F.2d at 781. The opinion concluded that the reliance interest asserted by the police officers was weaker than that asserted by the prisoner in *Wycoff. Farmer,* 782 F.2d at 781.

The next Eighth Circuit decision on the issue of retroactivity was *Ridgway v. Wapello County, Iowa,* 795 F.2d 646 (8th Cir. 1986). There, suit was filed in August, 1983, under 42 U.S.C. § 1983, based on an incident that occurred in Iowa in February, 1981. Between those two dates, the Eighth Circuit had decided *Garmon,* 668 F.2d 400, which, it will be recalled, had held that Iowa's five-year statute of limitations applied to § 1983 actions. While the suit in *Ridgway* was pending, the Supreme Court of the United States decided *Wilson,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 whereupon the defendants in *Ridgway* moved for summary judgment on the ground that *Wilson* should be applied retroactively, thereby barring the suit under Iowa's two-year personal injury statute of limitations. The federal district court denied the motion. Upholding the district court, the Eighth Circuit in *Ridgway* observed that as to the "reliance" factor, the claimant reasonably relied on *Garmon* in filing the complaint. *Ridgway,* 795 F.2d at 647. At the time *Garmon* was decided, the claimant in *Ridgway* still had over one year to sue under Iowa's two-year statute of limitations. *Ridgway,* 795 F.2d at 647. The claimant in *Ridgway* sued two and a half years before the five-year limitation adopted in *Garmon* would have expired. Pointing out the difference between *Ridgway* and *Wycoff,* the opinion in *Ridgway* emphasized that when the prisoner in *Wycoff* filed his suit (prior to *Garmon* ), the law in the Eighth Circuit was in a state of confusion, thus the prisoner—unlike the claimant in *Ridgway*—was not justified in relying on the five-year limitation when he sued over four years after the cause of action arose. *Ridgway,* 795 F.2d at 648. As to the "inequity" factor, the Eighth

Circuit in *Ridgway* concluded that retroactive application of *Wilson* would be inequitable, as the claimant had reasonably relied on *Garmon* in believing she had five years to file suit. *Ridgway,* 795 F.2d at 648. As she commenced the action only halfway through the five-year period, she "by no means slept on her rights." *Id.* Recognizing that applying *Wilson* retroactively in *Ridgway* would deny the claimant a cause of action she had every reason to believe was not time-barred when she filed suit, and further recognizing that after *Garmon* the defendants in *Ridgway* could not have reasonably relied on the two-year personal injury statute of limitations, the Eighth Circuit in *Ridgway* declined to apply *Wilson* retroactively. 795 F.2d at 648.

After *Ridgway,* the Eighth Circuit next discussed retroactivity in *Lovejoy,* 798 F.2d 1201. There, the claimant brought an action under 42 U.S.C. § 1983 against certain Missouri municipal officials based on several incidents including one in 1979, one in 1982, and one in 1983. The federal district court excluded evidence regarding the 1979 incident on the ground that Missouri's three-year statute of limitations, § 516.130(1), barred that claim. The Eighth Circuit explained that it had applied *Wilson* retroactively in *Farmer,* 782 F.2d 780 (Missouri's five-year limitation for personal injury claims), and *Wycoff,* 773 F.2d 983 (Iowa's two-year limitation for personal injury claims), but not retroactively in *Ridgway,* 795 F.2d 646, where retroactive application would have worked an injustice on the claimant who, relying on *Garmon,* 668 F.2d 400 (prior to *Wilson* ), had believed she had five years to sue. *Lovejoy,* 798 F.2d at 1202 n. 2.

The next Eighth Circuit effort regarding the problem of retroactivity was *Jane Does 1–100 v. Omodt,* 813 F.2d 910 (8th Cir. 1987), where a county inmate in Minnesota brought a 42 U.S.C. § 1983 action in federal district court arising out of a strip search occurring in 1978. The inmate filed suit within the six-year Minnesota limitation on statutory actions, consistent with the Eighth Circuit's decision in *Garmon,* 668 F.2d 400. When the Supreme Court of

the United States decided *Wilson* in 1985, the district court in *Jane Does*, applying *Wilson* retroactively, held that the claim in *Jane Does* was barred by Minnesota's two-year limitation on personal injury actions. On appeal, the Eighth Circuit, employing the rationale of *Ridgway*, 795 F.2d 646, reversed, pointing out that the claim in *Jane Does*, like the claim in *Ridgway*, was different than the claim in *Wycoff*, 773 F.2d 983, in that the claim in *Wycoff* had already been barred by the Iowa two-year limitation before *Garmon* was decided. *Jane Does*, 813 F.2d at 911. In *Ridgway*, the claim was still viable when *Garmon* was decided, and the claimant could rely on the longer limitation established by *Garmon*. *Jane Does*, 813 F.2d at 911. Applying *Wilson* retroactively in *Jane Does* would have had the same effect that retroactive application would have had in *Ridgway*, i.e., barring a claim that the claimant had every right to believe was not precluded when suit was filed. *Jane Does*, 813 F.2d at 911. Accordingly, the Eighth Circuit in *Jane Does* declined to apply *Wilson* retroactively.

The same analysis was employed in *Dautremont v. Broadlawns Hospital*, 827 F.2d 291 (8th Cir.1987), an action under 42 U.S. C. § 1983 arising from three periods of involuntary hospitalization in Iowa, the first of which ended in September, 1979, and the second of which ended in 1980. Suit was filed in November, 1983. The Eighth Circuit applied *Wilson* retroactively to the claim regarding the 1979 hospitalization, pointing out that such claim was already barred by Iowa's two-year limitation on personal injury actions prior to the Eighth Circuit's decision in *Garmon*, 668 F.2d 400, which held that Iowa's five-year limitation governed § 1983 actions. *Dautremont*, 827 F.2d at 295. Thus, the claimant in *Dautremont* could not have relied on *Garmon* in waiting more than two years before suing for the 1979 hospitalization. *Dautremont*, 827 F.2d at 295. The ruling was different, however, regarding the 1980 hospitalization, where the two-year limitation had not yet expired when *Garmon* was decided. The Eighth Circuit in *Dautremont* held that the claimant was

entitled to rely on *Garmon's* adoption of the five-year limitation, and it would be inequitable to apply *Wilson* retroactively to bar the claim for the 1980 hospitalization where suit was filed within five years thereafter. *Dautremont*, 827 F.2d at 296–97.

■ Applying the principles gleaned from the Eighth Circuit cases discussed above, we hold that *Wilson* should be applied retroactively to plaintiff's claim in the instant case. The last day of plaintiff's alleged confinement in the Newton County jail was June 23, 1982. *Wilson* was decided April 17, 1985, at a time when plaintiff still had over two months left to sue under Missouri's three-year limitation, § 516.130(1). Consequently, plaintiff's claim was not time-barred when *Wilson* was decided. After *Wilson*, plaintiff could have reasonably assumed he had been granted two additional years to sue, making a total of five. His suit was filed within five years after the last date he was lodged in the Newton County jail. Applying *Wilson* retroactively will not revive a claim that was barred at the time *Wilson* was decided, while denying retroactive application of *Wilson* would bar a claim that was still viable when *Wilson* was decided. Such circumstances make plaintiff's case analogous to *Ridgway*, 795 F.2d 646, *Jane Does*, 813 F.2d 910, and the second claim in *Dautremont*, 827 F.2d 291, and unlike the claim in *Wycoff*, 773 F.2d 983, and the first claim in *Dautremont*.

Having ruled that *Wilson* shall apply retroactively in the instant case, we need not determine whether the running of the five-year statute of limitations, § 516.120(4), was tolled during plaintiff's alleged imprisonment from May 11, 1982, until November 8, 1985, as plaintiff commenced this action June 19, 1987, four days short of five years after his final day of incarceration in the Newton County jail.

As plaintiff's suit was filed prior to expiration of the applicable five-year period of limitation, the trial court's order of dismissal must be reversed and the cause must be remanded for further proceedings. Having reached that conclusion, we have disposed

of the only issue presented by this appeal. However, we would be remiss if we did not underscore some of the troublesome issues awaiting resolution in the trial court.

Newton County jail is, of course, neither a human being, a corporation, nor a political subdivision, thus it does not appear to be a suable entity. The return on the summons issued to Newton County jail, as recounted earlier, shows service on someone whose name is undecipherable. Nonetheless, the motion to dismiss raised no issue about these aspects of the case. Where this leaves the litigation in regard to those items is a subject we need not, and do not, address. We note, however, that plaintiff, in his brief, indicates that Newton County jail "would more properly be Newton County although [defendants'] motion to dismiss did not raise this point."

It is also noteworthy that the summons issued to Sheriff John Doe was served on Mark Bridges. It appears from correspondence attached as an addendum to plaintiff's reply brief that the sheriff of Newton County at the time of plaintiff's 1982 incarceration there was Joe Abramovitz. He is not named as a defendant, and no summons has been issued to him. Assuming, without deciding, that Bridges, by reason of the motion to dismiss filed by attorney Magruder, has become a party to this litigation, it nonetheless appears that Bridges is not answerable for the conditions complained of in plaintiff's petition. That, however, remains to be determined in the trial court. Whether Abramovitz is now immune from suit by reason of the running of the period of limitation is another issue not presently before us.

Taking the case as we find it, and confining our decision strictly to the limitation issue presented by the present record, we reverse the trial court's order of dismissal and remand the case for further proceedings.

GREENE, P.J., and HOLSTEIN, J., concur.